JOHNSTON, Cn.,
dissenting. Neel, in his lifetime, had received as guardian of Mrs. Eloyd, several sums of money; all of which he had acknowledged in his annual returns, except the sum of two hundred and seventy-four dollars and sixty-nine cents. Soon after his death, Priester and Nelson, bis administrators, stated an account with the ward, in which both parties being ignorant of the two hundred and seventy-four dollars and sixty-nine cents, it was omitted. For paying over the other sums no commissions were claimed or allowed.
On discovering the two hundred and seventy-four dollars and sixty-nine cents, the ward and her husband filed their petition, *253 praying that the settlement be opened and corrected, by adding that sum to the balance of the account; to which the administrators assented, on condition that errors and mistakes be corrected on both sides; and claiming commissions for their intestate on the sum which they had paid over; and also for the receiving and paying over the two hundred and seventy-four dollars and sixty-nine cents. And the decree opened the account on these terms.
The second ground of appeal insists, that the Court “ erred in ruling, after a settlement had been made, and the money paid over, without allowing commissions, that it could be opened and commissions allowed.”
The settlement was opened at the instance of the petitioners themselves; and certainly they cannot complain of that; and I suppose nothing is better understood here than that he who would have equity, must get it upon equitable terms. If the defendants’ intestate was justly entitled to the commissions claimed it would have been a partial administration of justice to open the account on the other side and keep it closed against them.
Besides, the case of Vance vs. Gary,(a) is express that commissions for paying out, are not forfeited by a settlement and actual payment, even under a decree,.in which the commissions have not been noticed.
The only question therefore, arises under the remaining (or first) ground of appeal, which affirms that the Court erred, in ruling that the estate of Neel was entitled to two and a half per cent, commissions for paying out his ward’s estate, though it remained in his hands at his death, and was not paid out by him, but by his administrators after his death.
The amount involved in this case is trifling, and the principle is not of the first magnitude; but still it is important in prac *254 tice; and it is of consequence that it should be settled in conformity with justice, if the rules of law permit.
The statute of 1745 is the only one regulating the commissions of guardians, and is only accessible in Judge Brevard’s Digest, (a) After a clause rendering it the duty among others, of guardians and trustees, having the custody of the estates of minors and infants, to make returns; it is enacted that “every executor, administrator, guardian or trustee, shall * * for his trouble and attendance, in the execution of their several duties, take and receive, or retain in his * * hands, a sum not exceeding two pounds ten shillings, for every one hundred pounds which he * * shall hereafter receive; and the sum of two pounds ten shilling for every one hundred pounds which he y * shall hereafter pay away, in credits, debts, legacies, or otherwise * * and so in proportion,” &e.
There is no doubt that the administrators of Neel’s estate are entitled to two and a half per cent, as a charge on his estate, for the sum paid out by them on the settlement, and to a like per centage for the two hundred and seventy-four dollars and sixty-nine cents, to be added to that sum and now decreed against that estate. It is a debt due by Neel, and which they are bound to satisfy out of the assets in their hands.
But the question now raised, and I think for the first time, is whether they are not entitled to receive or retain, for the *255 benefit of that estate — (not for their own benefit) a similar and equal commission, due to Neel, as guardian, when he or his representative pays over the trust fund to his ward. There is no double commission in the case, as has been argued at the bar, but a mere seruple whether the ward has not received as full justice by the administrator’s payment of the money as if the guardian himself had paid it. What difference can it make by what agency, or by whose hands the guardian discharges his obligation, or the ward receives satisfaction of her claim ?
In numberless instances, the Court has allowed to the sureties of administrators and guardians who have been held responsible for the administration of their principals, the same commission the principals would have been entitled to, if they had been solvent and had themselves paid the balance of their account, and I do not remember that it ever made any difference whether the administrator or guardian was dead or alive at the time, or had or had not ceased to occupy his office. This certainly countenances the idea that it is not the official character of the person who discharges the claim that entitles to the commission, and, that the only question is, whether the cestui que trust on receiving his money, is not bound to render the commission due on its payment.
What difference in the eye of justice ean possibly arise from the fact that Neel’s estate, and not Neel himself, pays the ward’s estate to her?
It is objected that when the administrator pays it, it is a debt. And what else would it have been if Neel had paid it?
It is and always was a debt; but the difference between a debt due to a ward and other ordinary debts is this, and it is a very material one ; that ordinary creditors are not chargeable by any law with commissions for receiving their money. Is it so with money due to a ward ? The statute answers the question, by declaring that for the guardian’s trouble and care in his office he is entitled to two and a half per cent, at the paying *256 oyer the funds — not for the mere payment, but for the superintendence of the estate.
When the administrators of Neel came to the account, the law gave them this offset on behalf of their intestate for his official labors; and, though they had actually paid over the whole fund without first making the offset, even though they did it under decree, the case of Vance vs. Gary,(a) shows they were entitled to recompense for the commission.
Let it be granted that the guardian’s power of further administering his trust ceased at his death, and was not transmitted to his administrators. It was no more so than if his appointment had been revoked, and his ward coming of age about the same time had called him to account. Was it ever heard that in such a case, the man accountable for the funds though no longer guardian, would not be entitled to commissions on fully satisfying the claims of his former-ward?
I cannot see how the personal representative of a deceased guardian, liable to account, and actually called to account as representative, does not represent him in the payment of the sum found to be due as fully as in the taking of the account, or in any other transaction for which the law requires him to represent him. When he performs a duty in his place, it seems to me, the law by implication puts it to the credit of him in whose stead it is performed.
There are some observations in the circuit opinion in Ex-parte Witherspoon,(b) which have been pressed in argument, far beyond the point decided in that case, and certainly far beyond anything to which this Court, if we look to the opinion given by it, can be said to have given its sanction. Though I concurred in the latter judgment, I certainly never assented to those dicta in any general sense, but only as applicable to the ease under appeal. An administrator of an estate paid out the share of an infant distributee to himself as guardian of that *257 distributee; and was allowed a commission for the payment. This was proper, but' does not concern this ease. He was allowed a commission as guardian, for receiving his ward’s share. This was also proper, but is not inconsistent with the decree in the present case. He died, and his administrator was not allowed a commission; not for paying over the fund to the ward, for this he never did — but for transfering it to a succeeding guardian, to be by him paid over. He was not allowed commissions on this transfer, nor was the successor allowed commissions for becoming the depository of it. And why ? Simply because the ward received no benefit by the transfer. The guardianship was an unit, and was simply continued by the act done. There was no payment over. How does this apply to the present case, where the ward has received a benefit and been put in possession of the fund entrusted to him whom she holds responsible, and from whom she withholds the compensation which the law allows.
The view I am combating, is contrary to the general practice, as I am well assured by an attentive observation of that practice in all parts of the State during the twenty-five years of my judicial life.(a) It is founded on a very narrow construction of the statute. The construction should be liberal, and made to conform to justice and policy — especially when sustained by general and well settled practice in the offices of Masters and Commissioners in Equity, as I know it to be. But the construction now adopted defeats justice and policy, as well as contravenes usage. By this construction, a guardian against whom there is not the slightest imputation is made loser, simply because he happens to die before he closes his trust, although it is closed up by his administrator acting as his representative. *258 Mr. Neel’s estate for example, gets two and a half per cent, for receiving his ward’s funds. But, on the other hand, it is charged with a commission to his administrators of five per cent, for their receipt and disbursement of it. Is this just ? Is it politic ? Who will accept the trust upon such terms ?
On the whole I have no doubt that justice and the fair construction of the statute require that the decree should be affirmed, and the appeal dismissed.

Deoree modified.

 Rice. Eq. 2.

 3 Brev. Big. 392, Sect. 2.
Dr. Cooper, in compiling the statutes, omitted this clause of the statute of 1745, supplying its place with the remark, “Altered by A. A. 13th March, 1789.” (See S Statutes at Large, by Cooper, 666, et seq.) Judge Grrimke, in his edition of the statutes, acting under a similar impression, and incorrectly conceiving this clause superseded by the Act of 1789, entirely omitted it. (See Public Laws, by Grimko, 494.) The clause of the Act of 1789, relating to compensation, is in the words above quoted from the statute of 1745, except that while the words evecxitors and administrator8 are retained, those designating guardians and trustees are omitted. Judge Brevard perceiving the mistake of the previous compiler, Grimke, (Cooper had not then made his compilation) inserted the clause entire from the Statute of 1745, as well as a previous clause, showing that the trustees intended were such as had the custody of infants* estates.

 Rice Eq. 2.

 3 Rich. Eq. 13.

 In tbe veryoffico from which this case came, tbe practice was uniformly according to my view, under all its able commissioners, until tbe appellant's counsel, (for many years one of tbe commissioners) was induced by tbe unfortunate dicta, in tbe circuit opinion in Ex parte Witherspoon, to make tbe point.